## MARY R. HURLEY ET AL. *vs.* CARROLL S. ROSEN-STEEL ET AL.

*Construction of a Devise in Trust for Life with Limitation Over—Contradictory Clauses in Will.*

A testator gave three-fifths of his estate to a trustee with directions to pay the income to his daughter during her life, and from and immediately after her death, he gave that share to the children of his daughter, the descendants of any deceased children to take *per stirpes*, absolutely and free from the trust, and provided that if his daughter should die without leaving issue, the income of that share should be paid to his son for life, with remainder to his children. By the next clause, the testator gave two-fifths of his estate in trust for his son for life, with the same limitations to his son's children. Subsequently, the will provided as follows: "If my son and daughter both leave children or descendants living, they are to take the property hereby devised to them in equal proportions share and share alike." Both the son and daughter died, leaving children surviving them. *Held,* that the last-mentioned clause of the will does not require the estate to be divided equally between all the grandchildren, but the children of the daughter are entitled to three-fifths, and the children of the son to the other two-fifths of the estate.

*Decided November 2nd, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*John V. L. Findlay* (with whom was *Thos. Mackenzie* on the brief), for the appellants.

*Ferdinand C. Dugan,* for the appellees.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, construing the last will and testament of George T. Rosensteel, Sr. The testator, after making a number of

bequests of personal property and devising a house and lot on Myrtle evenue to his sister, for and during her natural life, left the residue of his estate to Pierre C. Dugan, trustee. As the provisions for his daughter Mary and his son George are in the same terms, excepting to his daughter he left *three-fifths* and to his son *two-fifths*, we will quote those made for his daughter, which are as follows:

"In trust to collect and receive the rents, issues, and profits thereof, and after paying all necessary taxes and charges thereon, and expenses thereof, to pay three-fifths of the net income and profits thereof to my daughter Mary, for and during her natural life; and from and immediately after her death, I give, devise and bequeath said three-fifths of property mentioned in this residuary clause of my will, to the children of my said daughter Mary, who may be living at the time of her death and the descendants then living of any deceased child or children of hers, said descendants to take *per stirpes* and not *per capita,* absolutely and free from this trust; but if my said daughter Mary shall leave no child or descendants living at the time of her death, then in trust to pay said three-fifths of said net income to my son George during his life, and from and immediately after his death, I give, devise and bequeath said three-fifths of the property mentioned in this clause of my will, to the children of my said son George, who may be living at the time of his death, and the descendants then living of any deceased child or children of his, said descendants to take *per stirpes* and not *per capita*, absolutely and free from this trust."

Immediately following the above are the provisions for the son George. The testator then directed what should be done if his daughter and his son both died without leaving a child or descendant, and then follows this clause: "If my son George and daughter Mary both leave children or descendants living, they are to take the property hereby devised and bequeathed to them in equal proportions, share and share alike." It is the apparent conflict between that clause and the previous clauses providing for his daughter and son that give rise to this controversy.

At the date of the testator's death, George was married and had two children, one of whom died shortly after the death of the testator and another was born afterwards. Mary married George C. Stuart and had four children, all of whom survived their mother, who is now dead. George is also dead, having left two children surviving him. Percy M. Stuart transferred his interest to Alonzo M. Hurlock. Mary R. Stuart married Frank C. Hurley and she is also committee for her brother, Charles C. Stuart, who is a lunatic. The appellants contend that by the true construction of the will, and by virtue of the clause last quoted, the residuary estate should be equally divided between all of the grandchildren, while the appellees contend that three-fifths of the estate went to Mary's children and the other two-fifths went to George's children. The Court passed a decree in accordance with the latter contention, and from that decree this appeal was taken.

It will be observed that, after directing the trustee to pay three-fifths of the net income and profits thereof to his daughter for life, the testator said: "And from and immediately after her death I give, devise and bequeath said three-fifths of property mentioned in this residuary clause of my will, to the children of my said daughter Mary, who may be living at the time of her death, and the descendants then living of any deceased child or children of hers, said descendants to take *per stirpes* and not *per capita*, absolutely and free from this trust." As his daughter left four children living at the time of her death, and no descendant of a deceased child, those four children undoubtedly took said three-fifths *"absolutely and free from this trust,"* immediately after her death, unless the subsequent clause above quoted changed the gifts to them. If she had died without leaving any child or descendant, then George would have been entitled to the income from the three-fifths during his life, and upon his death his children would have taken said three-fifths, absolutely and free from the trust. Precisely similar provisions were made in reference to the two-fifths left to the son for life, and at his death to his children, and the descendants of any deceased child. As the daughter

and the son each left children surviving them, the contingencies provided for by the will that, in case either of them died without leaving children or descendants, the three-fifths or two-fifths, as the case might be, should go to the other, never happened, and of course the provisions made for the contingency of both dying without leaving children are not applicable to the existing facts. Judging from the allegations in the bill filed to have the property sold, Mrs. Stuart probably died before George, but the agreement of facts in the record is silent on that subject, and as the provisions in the will as to the two are similar, except as to the proportions taken, we will assume, for illustration, that the son died first. That being the case it is manifest that upon his death his two children took the two-fifths, in the language of the will, "*immediately*" and "*absolutely* and *free from this trust.*" Whether the contingency provided for in the last clause—that "both leave children or descendants"—would happen, could not be determined when the son died, because the daughter was still living and might have died without leaving any children or descendants.

On the assumption then that the son died first (and whether that is correct or not is immaterial, as the same results would follow as to the daughter's three-fifths) his two children took the whole of the two-fifths *immediately and absolutely at his death*, and the two-fifths were free from the trust. The clause relied on by the appellants could not therefore affect those two-fifths, which were then vested in the two children of George, unless they be divested of part of what was thus vested in them at the death of their father. Moreover, it would have left their interests in great uncertainty for they could not have known how many, if any, children Mrs. Stuart would leave surviving her. If she left four, or more, then under the appellants' contention the two-fifths of the appellees would be lessened; if she left three, no change would be made, and if less than three then George's children would retain their original two-fifths and have an interest in Mrs. Stuart's three-fifths. When we see what care was taken in providing for

different contingencies, it is altogether improbable that the testator intended to leave his estate in such uncertainty and confusion. Indeed it is reasonably certain that if he had intended an equal division of the whole property between *all* of his grandchildren, he would have kept the whole of the residuary estate *in trust*, until the death of both his son and his daughter—giving the children and descendants of his daughter, if she died first, the income of the three-fifths until the son died, or those of his son, if he died first, the income of the two-fifths until his daughter died—and would not have provided that these respective interests should vest *immediately and absolutely upon the death of the daughter or son.*

But what were the children or descendants of George and Mary to take "in equal proportions, share and share alike?" The clause of the will in controversy answers that inquiry—"they are to take the property hereby devised and bequeathed to them in equal proportions," etc. What property was *"hereby* devised and bequeathed to them"—that is to say, what property was by previous clauses of the will devised and bequeathed to them? Clearly, three-fifths of the residuary estate to the children of Mary who were living at the time of her death, and two-fifths to the children of George living at the time of his death. The testator was then referring to what he had done in the previous part of the will, and he did not in that clause make any devise or intimate that he intended to take from his grandchildren or their descendants, or any of them, any portion of the property devised and bequeathed to them by the previous clauses of his will, and there can be no possible doubt as to what was devised and bequeathed by those clauses. He had not only made that disposition of his residuary estate, but by a clause subsequent to the one relied on by the appellants he authorized the trustee named in the will "to sell, convey and assign the whole or any part of my estate and property, for the purpose of division among the persons entitled hereunder," etc.

It must be confessed that it is not altogether clear what the testator did mean by the clause in controversy. If his object

was to in some way alter the devises and bequests already made to his grandchildren, or their descendants, it might be argued that he intended that the descendants of a deceased child of Mary should take in equal proportions, share and share alike, with the children of Mary, and so with those of George. As there were no such descendants in either instance, that is not a practical question in this case, but such a construction would not be reasonable, for the testator, in speaking of the descendants of any deceased child or children in the various provisions made in the residuary clause of the will, seven times used the expression "said descendants to take *per stirpes* and not *per capita.*" Yet if the appellants are right, if either Mary or George had left "descendants," they would have taken "in equal proportions, share and share alike" with the children living—notwithstanding the testator had, in speaking of the children and descendants of Mary and George, four times said the descendants were to take *per stirpes* and not *per capita*, and had used the same expression three times in disposing of the estate, in case neither Mary nor George left children or descendants. It would therefore seem altogether improbable, if not impossible, that the testator could have, by those few lines, intended to so radically change the provisions about the descendants, which had been so carefully worded and so emphatically stated. We must not forget that although there were no descendants of deceased grandchildren, living at the death of either Mary or George, the testator was providing for such contingency, and hence in construing the will it is entitled to as much consideration as if the contingency had happened. It would be contrary to the whole scheme of the will in reference to "descendants" to hold that they were to take equally with each other and with the grandchildren of the testator, and yet that would have been the result if a child of either the son or daughter had died leaving descendants, if the appellants' construction is adopted.

It may be that when the draughtsman reached this point in the will he noticed he had not used the expression often found in wills making devises to more than one person—"in equal

proportions, share and share alike"—and deemed it desirable to do so, although of course it was not necessary, and that all he meant to say was that the children or descendants of George and Mary were to take the property devised and bequeathed to them by the former clauses of the will—that is to say the three-fifths and two-fifths, respectively—in equal proportions, share and share alike, subject to the further provision that the descendants would take *per stirpes* and not *per capita*. But whatever the object was, the testator did not by this clause so clearly indicate an intention to change the devises previously made in the will as would justify us in holding that it changed the whole scheme of the will and divested his grandchildren of any part left to them and so clearly set out in the previous clauses. The devises in remainder to the children and descendants of the son and daughter were not only vested in them, upon the death of their respective parents, but they were entitled to the possession and absolute control of them, as soon as that could be accomplished under the terms of the will, and we are of the opinion that if the testator intended to make such changes in the previous clauses as the appellants contend he did by the clause in question, he should have used more certain terms to indicate such intention. As is said in *Jarman on Wills*, 479, "Where there is a clear gift in a will, it cannot afterwards be cut down except by something which with reasonable certainty indicates the intention of the testator to cut it down. It need not (as sometimes stated) be equally clear with the gift, 'You are not to institute a comparison between the two clauses as to lucidity.' But the clearly expressed gift naturally requires something unequivocal to show that it does not mean what it says."

As we agree with the Court below that by the true construction of the will the children of Mary Stuart were entitled to three-fifths of the property, passing under the residuary clause of the will, and that the children of George T. Rosensteel, Jr., were entitled to the other two-fifths, we will affirm the decree.

*Decree affirmed, the costs to be paid out of the fund reserved for that purpose by agreement of counsel.*