## SUSAN LOWE *vs.* ELIZABETH WHITRIDGE ET AL., EXORS., ETC.

*Construction of a Will Giving a Legacy to Servants—Parol Evidence of Intention of Testator to Affect Construction of Will—When such Evidence, Admitted Without Objection, will be Disregarded on Appeal.*

A testatrix gave pecuniary legacies to a number of her domestic servants, to be paid if the legatees "shall be living at the time of my death, otherwise to constitute a part of the residuum of my estate." At the end of this item of the will, she directed her executor "to pay in full

those legacies hereinbefore provided for the several persons now in the employ and who may constitute my household at the time of my death, as soon thereafter as possible and without regard to the sufficiency of my estate to pay in whole, the other legacies," One of the legacies was given to decedent's housekeeper, Susan, who left her employment after the execution of the will and had not been there employed for about four years before the death of the testatrix. *Held*, that the absolute legacy to Susan was not limited or cut down by the subsequent direction as to the payment of the legacies of the servants in the employment of the testatrix at the time of her death, but this latter provision related only to the time of payment and the abatement of the legacies to such servants.

When legacies are given absolutely by will to employees of the testatrix, evidence is not admissible of statements made by her that she intended to give bequests only to such of her servants as were in her service at the time of her death.

If incompetent evidence of declarations made by a testator concerning his purpose in making certain bequests, different from the effect of the· language of the will, has been admitted without objection in the Court below, it will neverthelese be rejected on appeal in the construction of the will. The provision of Code, Art. 5, sec. 36, that no objection to the admissibility of evidence shall be made in this Court unless such objection was made in the trial Court, is not to be so construed as to permit parol evidence to change the legal effect of a will, especially in view of the provision of Code, Art. 93, sec. 318, that no will or any clause thereof shall be revoked otherwise than by its destruction or by some other writing duly attested.

*Decided February 16th, 1907.*

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Morrill N. Packard* (with whom was *Herman T. W. Heimiller* on the brief), for the appellant.

*Henry C. Kennard* and *Frank B. Smith* (with whom was *Edward Guest Gibson* on the brief), for the appellees.

BOYD J., delivered the opinion of the Court.

This is an appeal from a decree passed in Circuit Court No.

2, of Baltimore City, dismissing the bill of complaint filed by appellant against the executors of Mrs. Grace Ann Greenway, to require them to pay her a legacy of $1500, which she claims she is entitled to under the last will and testament of Mrs. Greenway. It is conceded that there are sufficient funds in the estate to pay the legacy in full, but the executors contend that the appellant is not entitled to it, under the terms of the will, and that certain parol testimony which they claim must be considered by this Court conclusively establishes their contention. We will first examine the will.

(1.) After disposing of certain property under the power conferred on her by the will of her father, the late George Brown, and making some bequests of her wearing apparel, jewelry, silverware and other personal property, she directed and empowered her executors to sell her real estate, as soon after her death as practicable, and to convert into cash such of her personal property as they might deem necessary and, after providing for her just debts and funeral expenses, "to dispose of my estate as follows, viz : to pay the following legacies : " She then gave thirteen legacies to relatives and friends and one to the Woman's Industrial Exchange, and under the same " Item " she added ; I desire the respectively designated legacies to be paid the following named parties, *if they shall be living at the time of my death,* otherwise to constitute a part of the residuum of my estate, viz ; To my nephew Eugene Greenway, fifteen thousand dollars ; To my maid Elizabeth McCausland, twelve thousand dollars ; To my housekeeper Susan Lowe, fifteen hundred dollars," etc. There are fifteen other legacies immediately following those, varying from one hundred dollars to fifteen hundred dollars, which were given to her seamstress, cook, laundress, coachman, butler, waiter, housemaid, dressmaker, her mother's cook and maid servant and several other persons named. The will is dated April 29th, 1899, and at that time Mrs. Lowe, who is the appellant, had been housekeeper for the testatrix for fifteen or sixteen years but left in October, 1899. The testatrix lived until September 9th, 1903.

As the appellant was living at the time of the death of the testatrix it would seem to be too clear for controversy that she is entitled to the legacy left her, as above stated, unless there be something in the will to change, modify or in some way affect that plain language. But after directing her executors to purchase from some responsible insurance company, annuities available one year after her death, for three of her servants, " *if they be then living*," she concluded this item of her will by the following provision : " I request my executor and executrix to pay in full those legacies hereinbefore provided for the several persons *now in my employ and who may constitute my household at the time of my death*, as soon thereafter as possible and without regard to the sufficiency of my estate to pay in whole or in part the other legacies and bequests in this my will." The appellees contend, and the Court below decided, that the language italicized by us in the clause last quoted limited the legacies to her employees, previously provided for in the will, to those who were a part of her household at the time of her death, and that inasmuch as the appellant was no longer there and had not been since October, 1899, she is not entitled to the one given her. But it seems to us that such construction is not justified by the language used by the testatrix, under the well established rules of construction applicable to wills. The only limitation upon the right of the legatees to take the legacies respectively given them, used by the testatrix in the clause by which they were given, was: "*If they should be living at the time of my death*, otherwise to constitute a part of the residuum of my estate." There is no suggestion that she meant to impose the further condition that they were to constitue her household and still be in her employ at the time of her death. The clause relied on by the appellees speaks for itself as to what the testatrix thereby intended, which evidently was that her executors should *pay in full* those of her legatees previously mentioned who were in her employ when her will was executed and who constituted her household at the time of her death, *as soon as possible after her death* and that the legacies

left to such persons *should not abate*, if her estate was not sufficient to pay all the legacies and bequests given by her will. That is the natural and what seems to us to be the plain meaning of the clause.

In *Hurley* v. *Rosensteel*, decided at October Term, 1906, 104 Md. 262, of this Court, we quoted with approval from 1 *Jarman on Wills*, sec. 479, that "where there is a clear gift in a will it cannot afterwards be cut down except by something which with reasonable certainty indicates the intention of the testator to cut it down. It need not (as sometimes stated) be equally clear with the gift. 'You are not to institute a comparison between the two clauses as to lucidity.' But the clearly expressed gift naturally requires something unequivocal to show that it does not mean what it says." Applying that to this case, this subsequent clause does not "with reasonable certainty" indicate an intention of the testatrix to take from the appellant what was doubtless intended as a reward for past services and a provision for the comfort and support of this old woman who was then about seventy years of age. It matters not whether the appellant left the services of Mrs. Greenway on account of her health or she was discharged by reason of her habits, as claimed by the appellees, the will of Mrs. Greenway shows too plainly that she was desirous of rewarding the appellant and others who had been faithful in their services to her, to permit a gift made by her to such an one to be revoked by anything less than a clear intention of her part to do so. The testatrix lived over four years after she made her will, and nearly that length of time after the appellant left her employ, and if she had not intended her to be the recipient of her bounty she had ample opportunity to say so in the way the law provides for changing wills. We can have no doubt about her intention, as shown by the will and such evidence explaining the surroundings of the testatrix and the appellant as we can properly consider.

2. The appelless offered evidence of statements made by the testatrix to show that her intention was to only leave legacies to such of her servants and employes as remained with

her until her death, and even called the scrivener to place his interpretation on the language used in the will on that subject. If such evidence be permissible, or can be considered by a Court called upon to construe a will, then our statutes in reference to the execution and revocation of wills are worse than useless, for they might induce testators to suppose that their devises and bequests were to be governed by what they said in their wills, whilst under that theory of the admissibility of evidence, they would depend upon the recollection, honesty, understanding and intelligence of witnesses, who might be called upon to testify to statements of testators, either before, at the time of or after the execution of their wills. It ought not to be necessary to cite authorities to show that such evidence is not admissible, for they are too numerous and clear to admit of doubt. In *Zimmerman* v. *Hafer*, 81 Md. 352, the present Chief Judge, in delivering the opinion of the Court, said: "Just as he has written his will, it must stand. What he meant to say must be gathered from what he did say therein, as viewed from the standpoint that he then occupied; and what he did say in the will itself, and not what he previously declared, no matter how unequivocal its import may be, must solve the question before us." In *Frick* v. *Frick*, 82 Md. 222, after saying that, in seeking the intention of the testator from the face of the will, it was permissible to ascertain the facts and circumstances respecting the persons and property to which the will relates, we said: "We cannot, however, resort to extrinsic evidence to ascertain from the scrivener what the testator instructed or intended him to say, as was attempted in this case, nor can we accept the declarations of the testator to establish his intention or to aid in the interpretation of the will." And in the late case of *Shipley* v. *Mercantile Trust Company*, 102 Md. 658, we quoted from 1 *Redfield on Wills*, 540, that: "The delarations of the testator, whether made before, contemporaneously with, or subsequent to the making of the will cannot be received to affect its construction. This has been repeatedly decided by the American Courts. The declarations of the testator after making his will,

of his purpose. and intention therein, are not admissible in evidence to control or explain it."

But it is contended that inasmuch as such evidence is in the record, and no exceptions were filed to it, this Court is required to consider it under the statute, which provides amongst other things that no objections to the admissibility of evidence shall be made in this Court "unless it shall appear by the record that such objection was made by exceptions, filed in the Court from which such appeal shall have been taken." That statute has been applied in a number of cases by this Court and our predecessors, but no case can be found in which it has been extended so far as to require this Court to virtually permit a will to be made for a testator, or to revoke one already made, by parol testimony. By sec. 317 of Art. 93 of the Code, wills executed in this State, disposing of either real or personal property are required to be in writing, signed by the testator or by some one for him in his presence and by his express direction and to be attested and subscribed in his presence by two or more credible witnesses, "*or else they shall be utterly void and of none effect.*" By sec. 318 no will, or any clause thereof, can be revoked otherwise than by some other will or codicil in writing, or other writing declaring the same, or by its destruction by the testator or in his presence and by his direction and consent, and the new will, codicil, etc., are required to be executed with the same formalities as the will intended to be revoked. Yet if the theory of the appellees be correct, parol evidence of witnesses, if not properly excepted to could change the entire legal effect of a will, or a clause thereof, as shown by what the testator had said therein, and this Court would be helpless and would be required to accept the parol evidence to the extent of altering the will, although it would be in the teeth of these provisions of our testamentary laws, which are intended to protect wills by safeguards suggested by experience. If all the devisees and legatees mentioned in a will desired to change it, or some part of it, it would be possible under such a theory for some to proceed against the others for a construction of it, take tes-

timony to which no one would file exceptions and thereby require this Court to accept it, in construing the will.

In *Sewell* v. *Slingluff*, 57 Md. 537, Mrs. Slingluff made a will leaving all her property to her mother. Parol evidence was offered to prove that the testatrix had delivered it to her husband with the request, understanding and direction that it was not to be taken or probated as her will in case she died leaving issue, but in such event it should be inoperative so that her estate should pass as if it had never been executed. She died leaving issue and a bill was filed to enjoin her mother from offering said paper for probate. This Court said: "To allow the parol declarations of the testatrix, whether made before, after, or at the time of the execution of the will, to render that will inoperative at some future time, and in the event of some future contingency, would be nothing more or less than to allow a parol revocation of it. It makes no difference that we can see, whether such revocation is called a revocation or by some other name." In passing on the question, the Court said: "Wills are more especially guarded and protected by the law, than any other instruments. They are guarded in their inception by the formalities required by our statute, and after they are made they are equally guarded by our statute, which points out the only mode by which they can be revoked or annulled." Yet under the appellee's theory the provision in this will, which we have determined above is sufficient to entitle the appellant to a legacy of $1,500, could be rendered inoperative by parol proof of a contrary intention expressed by the testatrix. If the testatrix had expressed an intention to revoke the legacy, even by a paper writing, written and signed by her, it could not have had that effect, unless it complied with the requirements of the statute as to attestation, etc., and no Court would have been justified in holding that such a writing had that effect notwithstanding there was no exception to the introduction of it in evidence. That would be so, simply because it would not be such a paper writing as could revoke a will, or any part of it, and upon what principle can it be held that parol evidence, although not excepted to,

could have such effect?　In short, the law does not permit parol evidence to alter, or revoke a will, executed as required by the statute, yet that would be the effect of the appellees' contention, if sustained.

In *Shreve* v. *Shreve*, 43 Md. 382, testimony was taken of parol declarations by the testatrix after she had made the will as to its effect and her intentions in executing it, and it was contended that, as the testimony was not excepted to in the Court below, it could be resorted to by this Court in ascertaining the rights of the parties and must be allowed its full force.　This Court said on page 393 that : " All this testimony was clearly inadmissible to affect the construction of the will or the rights of the infant defendants."　It then referred to the fact that the adult defendants had parted with their rights in the property, had no interest in resisting the complainant's claims, and the infants were not represented by counsel, either at the taking of the testimony or at the hearing of the case when exceptions to it ought to have been filed, and said :　" Under these circumstances, it would be an unreasonable extension of the doctrine in *Gibbs* v. *Gale*, to apply it to this case, and we must therefore construe this will by the light afforded by the paper itself."　*Gibbs* v. *Gale*, 7 Md. 76, was the case relied on by the complainants to sustain their contention, as to the effect of the evidence not being excepted to.　It is true that the Court prefaced its conclusion by referring to the circumstances that the infants were not represented by counsel, etc., but the statute, requiring exceptions to be filed in the lower Court, does not make an exception in favor of infants, and if it is applicable to such evidence concerning wills as the appellees contend for in this case, this Court would have been required to consider the evidence in *Shreve* v. *Shreve*, and could not have construed the will alone " by the light afforded by the paper itself."　That case was referred to at some length in *Shipley* v. *Mercantile Trust Co.*, *supra*, although there exceptions were filed to the testimony objected to.　In *Frick* v. *Frick*, *supra*, there were no exceptions filed to the evidence, and although the brief for the appellees called attention to that fact we unhesitatingly re-

fused to resort to extrinsic evidence to ascertain what the testator instructed or intended the scrivener to say and would not accept evidence of the declarations of the testator to establish his intention or to aid in the interpretation of the will. There are doubtless other cases in which this Court has confined itself to the will on such questions, although extrinsic evidence was offered, which was not excepted to, but it would be useless to refer to them, as we are of the opinion that such testimony as we have referred to cannot be permitted to overcome or affect the evidence of the intention of a testator furnished by the will itself which, under the law, must be our guide.

It may be well to add that the case of *Struth* v. *Decker*, 100 Md. 375, does not in any way conflict with what we have said. In that case issues were being tried as to the testamentary capacity of the testator, his knowledge of the contents of the paper, whether any part of it was contrary to his instructions or was misunderstood by him, whether its execution was procured by undue influence, etc., but it did not involve, as this case does, the construction of a will or some part thereof. The evidence of Emma Struth was offered as reflecting on some of the issues. Her testimony was clearly hearsay but because it was admitted without objection we said, "it is in the case for all purposes and the Court must give it the same effect as if it had in fact been legally admissible." By that we only meant that it must be given the same effect as if it had not been hearsay, and did not intend to intimate ( and no such question was before us ) that such evidence could be accepted by the Court to show the intention of a testator when a will, admittedly valid, is being construed, as is being done in the case now before us. When such issues as those referred to above are being tried, evidence of the declarations, etc., of a testator may be admissible, although it would not be in a case such as this.

It follows that this decree must be reversed.

> *Decree reversed, with costs to the appellant, and cause remanded.*