511 So.2d 365 (1987)
In re ESTATE OF C.J. LENAHAN, Deceased.
Alice N. LENAHAN, Appellant,
v.
Arthur L. LENAHAN, Sr. and Cyril J. Lenahan, Jr., Appellees.
No. BK-17.
District Court of Appeal of Florida, First District.
July 10, 1987.
*367 Thomas M. Donahoo and Wallace B. Anderson of Donahoo, Donahoo & Ball, Jacksonville, for appellant.
Kenneth G. Anderson and James P. Stevens, Jacksonville, for appellees.
NIMMONS, Judge.
This case concerns a petition for construction of a will filed by the co-personal representatives (petitioners/appellees) of the Estate of C.J. Lenahan, deceased. The petition requested declaratory relief and a determination of what assets in the estate were liable for the payment of estate taxes. The specific determination before the court was whether the marital deduction trust created under the will for the benefit of the testator's wife, Alice N. Lenahan (respondent/appellant), was liable for the payment of federal and state estate taxes. The trial court held that the construction proposed by the co-personal representatives was correct under the terms of the will and the applicable law and ordered that all federal and state estate taxes be paid from the marital deduction trust. We affirm.
The will provisions involved in this dispute are reproduced as follows:
ITEM FIRST: My executors shall pay from my residuary estate all my just debts and funeral expenses, and all estate, inheritance and succession taxes, as soon as possible after my death without inconvenience to my estate or the executors thereof, without charging any specific legacy or devise therewith or with any part thereof, and without requiring contribution from any beneficiary of any policy of insurance on my life or any part thereof, or from any person receiving property included in my estate, other than under this will.
* * * * * *
ITEM THIRD: I give, devise and bequeath to my sons, ARTHUR L. LENAHAN, SR. and CYRIL J. LENAHAN, JR., as trustees, for the purposes hereinafter set forth that fraction of my residuary estate which shall be sufficient to utilize the marital deduction as presently defined by the Internal Revenue Code of 1954, or any other similar federal law in effect at the time of my death, to the maximum extent authorized by law, less the aggregate value of marital deductions, if any, allowed for such tax purposes by reason of interests in life insurance or in jointly owned property, or in other property or interests in property passing under this will or having passed to my wife, ALICE N. LENAHAN, otherwise than by this will. This trust is hereinafter sometimes referred to as my marital deduction trust.
* * * * * *
(a) Since the exact value of the allowable marital deduction cannot be determined until my federal estate tax return has been audited, I direct that the trustees, after such audit shall have been made and final tax values established, withdraw property from this trust and add it to my residuary estate, as hereinafter provided, or withdraw property from any residuary estate and add it to this trust to effect a proper distribution of property to my respective trusts.
* * * * * *
(c) I intend that the value for federal estate tax purposes of the property in this trust shall be available for the marital deduction allowed by the federal estate tax law applicable to my estate; and all questions pertaining to this trust shall be resolved according to this expressed intention. Furthermore, I direct that the powers of my *368 executors and trustees with respect to the property in this trust shall not be exercised nor be exercisable, except for a purpose and in a manner consistent with this intention.
* * * * * *
(f) None of the property in this trust shall be used for the payment of estate, inheritance, succession, legacy or other taxes that shall become payable upon or by reason of my death, except to the extent, if any, that all other property in my estate shall not be sufficient for this purpose.
* * * * * *
ITEM FOURTH: I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, of whatever kind and character and wherever situate, of which I shall die seized or possessed, or in which at the time of my death I may have any interest, whether in possession, reversion, remainder or expectancy, or over which I may have the power of testamentary disposition, which I hereby exercise, and any proceeds from insurance payable to me or to my estate, to my lineal descendants, in equal shares, per stirpes.
* * * * * *
The only testimony presented at the non-jury trial held on the petition was that of John G. Grimsley, the attorney who drafted the will. Grimsley was qualified as an expert in the area of estates and trusts. The main purpose in admitting Grimsley's testimony, according to the petitioners, was to assist the trier of fact in understanding the complex legal questions involved in the case. Appellant requested, via a motion in limine, that Grimsley's testimony be limited to the facts and circumstances existing at the time of the execution of the will and that Grimsley not be allowed to testify as to conclusions of law concerning the proper construction of the will. The trial judge denied appellant's motion and admitted Grimsley's testimony over appellant's repeated objections.
Three issues have been raised on this appeal, all of which merit discussion:
I. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE EXPERT TESTIMONY BY THE DRAFTSMAN OF THE WILL CONCERNING THE WILL'S PROPER CONSTRUCTION.
II. WHETHER THE TRIAL COURT WAS CORRECT IN HOLDING THAT THE MARITAL DEDUCTION TRUST SET FORTH IN THE WILL WAS LIABLE FOR THE PAYMENT OF ESTATE TAXES.
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO APPLY FLORIDA'S APPORTIONMENT STATUTE IN THE PRESENT CASE.

I.
The basis for appellant's argument that Grimsley should not have been permitted to render an opinion as to the proper construction of the terms of the will is two-fold. First, according to appellant, Grimsley, as an expert witness, should not have been permitted to testify as to conclusions of law because such testimony invaded the province of the trier of fact. Second, as the draftsman of the will, Grimsley should not have been permitted to testify as to his interpretation of the terms of the will because the admission of such testimony permitted the court to supplant the intention of the testator with the intention of the draftsman to the prejudice of the appellant.
The only testimony presented by Grimsley which concerned the issue of the testator's intent was that (1) the testator wanted a marital deduction trust established for his wife and (2) the will was drawn with the assumption that there would be adequate funds under ITEM FIRST to pay the estate taxes, under ITEM THIRD to fully fund the maximum marital deduction, and under ITEM FOURTH to leave the residuary gift to the decedent's son. The bulk of Grimsley's testimony concerned his own interpretation and construction of the terms of the will. He was permitted to express his opinion, over appellant's objections, as to what *369 property in the estate was liable for the payment of the federal and state estate taxes. According to Grimsley, the marital deduction trust of ITEM THIRD is responsible for the payment of estate taxes.
Grimsley testified that ITEM FIRST of the will is an apportionment clause and its intent is to direct the payment of the costs of administration and taxes from the residue of the estate. He opined that ITEM FIRST is thus a specific direction against application of Florida's Apportionment Statute.
According to Grimsley, the marital deduction trust of ITEM THIRD is clearly stated as being a fraction of the residuary estate. Because it is couched in such terms, it is not a general devise. The first step, according to Grimsley, is to carve out the marital deduction trust from the residuary estate, and the entire residuary estate is the entire probate estate after distributing the tangible personal property under ITEM SECOND. After the marital deduction trust is carved out of the residuary, the ITEM FOURTH residue remains from which the costs of administration and estate taxes must be paid. However, this final step cannot be taken in the instant case, says Grimsley, because ITEM FOURTH has been exhausted before payment of the costs of administration and estate taxes. It was exhausted in funding the marital deduction trust in ITEM THIRD.
In other words, the fraction of the residuary in ITEM THIRD funds the marital deduction trust. This in turn exhausts the residue. The prospect of an ITEM FOURTH gift is thus eliminated. As a fraction of the residue, the marital gift is part of the residue. ITEM FIRST directs the costs of administration, debts and estate taxes be paid from the residue, so they would be paid from ITEM THIRD, the marital gift. Consequently, says Grimsley, after the costs of administration, debts, and estate taxes are paid, what is left is the marital gift, and it goes in trust for the benefit of the surviving spouse.
More specifically, Grimsley expressed his opinion as to the thrust and importance of subparagraph (f), ITEM THIRD, with respect to the question of estate tax liability:
A Well, it's a reaffirmance of the directions in the prior two pages that say generally this is a marital gift, should qualify for the marital deduction because it's a deductible gift. It should be protected from erosion so that the full amount of the deduction will be achieved by the estate, and the last part of the paragraph says except to the extent that all other property is not sufficient to pay estate taxes, then the property in the marital trust has to be used to pay estate taxes.
Q Now, it says "... except to the extent, if any, that all other property in my estate shall not be sufficient for this purpose." What is there, sir, in your opinion, to indicate that the phrase "in my estate" there referred to probate estate?
A Well, it's part of the gift of property in the probate estate only and not a direction dealing with nonprobate estates. In fact, the will by definition deals with probate assets.
MR. DONAHOO: Your Honor, this is the area in which I will pose my objections because now we're getting into the conclusions of law by Mr. Grimsley as to this will and the interpretations as they apply, and I think the Court is in a better position to make those conclusions.
THE COURT: I'll make the conclusion.
MR. DONAHOO: Yes, sir.
THE COURT: But I'll allow him to ask the question. Your objections are noted.
Proceed and overruled.
BY MR. ANDERSON:
Q With respect to the words under Subparagraph (f), Item 3rd, "in my estate," what is there in that language to indicate that it's the probate estate, Mr. Grimsley?
A Again, the provision deals with the disposition of the probate estate to the trust and applies in my view only to the probate estate.
When asked by the court why the phrase "in my estate" would not have the same meaning in subparagraph (f) of ITEM *370 THIRD as it did in ITEM FIRST, Grimsley responded:
THE WITNESS: Because there we're dealing with establishing a bequest under the will, and a bequest under the will comes only from the probate estate, and the terms estate simply have different meaning in the two places.
THE COURT: In your opinion?
THE WITNESS: Yes, sir.
BY MR. ANDERSON:
Q Mr. Grimsley, with respect to that opinion, looking at the wording in provisions of Item 1st, what is the basis of your opinion?
A The clause "other than under this will" means property that's not in the probate estate and does not pass under the will. The only  the property that is not in the probate estate and could be treated for apportioning taxes is other property in the gross estate that's not in the probate estate, and the same type of analysis applies to Paragraph (f) in saying that "to the extent that all other property in the estate" meaning the property estate is insufficient to pay the taxes, then the marital trust must pay the taxes.
Appellant first argues that Grimsley, as an expert witness, should not have been permitted to testify as to the conclusions of law. Section 90.703, Florida Statutes, provides as follows:
90.703 Opinion on ultimate issue.  Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
This section has been interpreted by the Florida courts to mean that the test of admissibility is not whether the opinion is on the ultimate issue in the case but whether it can qualify under the standard stated in Section 90.702. See 1 Gard, Florida Evidence, § 12:11 at 437 (1980). Section 90.702 provides as follows:
90.702 Testimony by experts.  If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
Of course, there are instances when expert testimony on an ultimate issue will be rejected, such as where the question calls for an answer which tells the jury how to decide the issue and does not aid the jury in ascertaining the true facts. See 3-M Corporation  McGhan Medical Reports Division v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985); Town of Palm Beach v. Palm Beach County, 460 So.2d 879 (Fla. 1984) and Ehrhardt, Florida Evidence § 90.703 (2d Ed. 1984). Permissible trial court discretion in determining the range of subjects for expert testimony is not without limitation and such testimony should be excluded where the facts are of such a nature as not to require any special knowledge or experience in order for the trier of fact to form conclusions. However, as long as the disputed issue is beyond the ordinary understanding of the trier of fact, such expert testimony is admissible. Johnson v. State, 393 So.2d 1069 (Fla. 1980); Red Carpet Corp. of Panama City Beach v. Calvert Fire Insurance Co., 393 So.2d 1160 (Fla. 1st DCA 1981).
Many courts have interpreted Section 90.703 or its equivalent Federal Rule 704 as permitting witnesses to testify as to the substantive law relevant to the case, to draw legal conclusions and to suggest to the trier of fact the proper decision to reach. See Guy v. Kight, 431 So.2d 653 (Fla. 5th DCA 1983) (experts permitted to testify as to the meaning of certain legal terms; as attorneys with skill and knowledge in the area of contracts and settlement negotiations, the expert witnesses were found to be qualified to give their opinions as to the legal effect of the use of the term "tender" in a settlement situation); Red Carpet Corp. of Panama City Beach v. Calvert Fire Insurance Co., 393 So.2d 1160 (Fla. 1st DCA 1981) (expert testimony permitted regarding the meaning of certain terms in insurance policy); Warwick, *371 Paul & Warwick v. Dotter, 190 So.2d 596 (Fla. 4th DCA 1966) (no error in permitting an attorney to testify as an expert witness at trial as to substantive and procedural Florida law); and Bauman v. Centex Corp., 611 F.2d 1115 (5th Cir.1980) (expert permitted to testify that a defendant in a fraud case had a certain "intent" and "knowledge").
Appellees have asserted that one of the purposes behind admitting Grimsley's testimony was to assist the court in understanding and making an informed determination concerning the complex and obscure legal questions involved in the instant case, specifically concerning probate law, federal and state estate taxation, and will construction. Such questions certainly go beyond the ordinary understanding of the trier of fact and expert testimony on these questions would qualify under the standard enunciated in Section 90.702. Therefore, under Section 90.703, the fact that the expert's testimony may include an ultimate issue to be decided by the trier of fact will not generally render such testimony inadmissible.
However, appellant asserts that Grimsley's competency to testify as an expert, even to an ultimate issue, does not give him license to, in effect, testify as to his own intent as draftsman of the will and that the trial court effectively allowed the testator's intent to be supplanted with the intent of the draftsman.
We conclude that while expert testimony which addresses the ultimate issues in a case is generally admissible as long as it assists the trier of fact, such testimony is to be rejected if it amounts to inadmissible parol evidence in a will construction proceeding.
The intention of the testator is the polestar which guides all will construction proceedings. Marshall v. Hewitt, 156 Fla. 645, 24 So.2d 1 (1945). Parol and other extrinsic evidence is admissible to show the circumstances surrounding the testator at the time of execution of the will and to explain latent ambiguities. Redfearn, Wills and Administration in Florida, § 11-7 (6th ed.) A latent ambiguity is one which arises in applying the words of a will to the subject matter or object of the devise or bequest. Perkins v. O'Donald, 77 Fla. 710, 82 So. 401 (1919). The general rule as to the admission of parol evidence is that the intention of the testator must be gathered from the will itself, read in the light of the extrinsic evidence. Redfearn, Wills and Administration in Florida, § 11-7 (6th ed.)
Because it is the intention of the testator that governs in a will construction case, there has been some question as to the admissibility of testimony of the draftsman's own intention in preparing the will. It has been held that the testimony of the scrivener is inadmissible to show what he intended or what was meant by certain words or phrases contained in a will. Sharp v. Hall, 86 Ala. 110, 5 So. 497 (1889) (draftsman should not have been permitted to testify as to what he himself intended when he drew the paper in question); In Re Accounts of Executors of Haines, 8 NJ Eq 506 (1850) (drafting attorney's testimony that, by the word "expenses," testator intended to include the expenses of settling the estate, was inadmissible); M'Allister v. Tate, 45 S.C.L. (11 Rich.) 509 (one who drew a will will not be received as a witness to explain the meaning of certain ambiguous words; draftsman of will was held to be incompetent to say what was meant by the words "in fee simple for life"); Matter of Cord's Estate, 58 N.Y.2d 539, 449 N.E.2d 402, 462 N.Y.S.2d 622, (1983) (the search is for the testator's intent, and not that of the draftsman); Lowe v. Whitridge, 105 Md. 183, 65 A. 926 (1907) (testimony of a scrivener as to his interpretation of the language used in the will is not competent). See also 80 Am Jur 2d Wills § 1331 (1975) and Annot., 94 A.L.R. 262 (1935).
The Florida courts have not expressly dealt with the issue of whether the draftsman of a will can testify as to his interpretation of the terms contained in a will. However, the courts of this state have permitted the testimony of the drafting attorney in latent ambiguity cases, limiting such testimony to the surrounding circumstances of the testator when the will was made, *372 and the state and description of the testator's property in order to ascertain the testator's intention. See Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1 (1945) (testimony of draftsman of will for purpose of making clear the desires of testator as to possession, custody and control of his property after his death  a question that might have given rise to some doubt except for such testimony  was admissible); In Re Mullin's Estate, 133 So.2d 468 (Fla. 2d DCA 1961) (proper to admit drafting attorney's testimony to the effect that, immediately prior to the execution of the codicil which was the subject of interpretation, he had explained to the testatrix that under the will, inasmuch as her sister had died, the trust would not come into effect but that the residue of her estate would be divided equally between the five remaindermen named in the paragraph). See also 18 Fla.Jur.2d Decedent's Property, § 356.
Appellees in the court below argued that the draftsman's testimony was admissible as parol evidence to explain a latent ambiguity and to better effectuate and convey the declarations and intent of the testator and the circumstances surrounding the testator when the will was made. However, Grimsley's testimony extended beyond the scope of admissible parol evidence to explain a latent ambiguity. Grimsley's testimony did not concentrate on the circumstances surrounding the testator when the will was made. Rather, the bulk of Grimsley's testimony centered around his own interpretation of the terms of the will, i.e., his own intention in drafting the will. The admission of Grimsley's testimony as to his interpretation of the terms of the will violated the cardinal rule of will construction, namely, that it is the intention of the testator which governs. The search is for the testator's intention, and not that of the draftsman.
Accordingly, we conclude that even if the draftsman of a will is an expert witness who may assist the court in understanding the complexities of the case, he nevertheless should not be permitted to testify as to his interpretation of the language used in the will since the polestar of any will construction proceeding is the intention of the testator.
Nevertheless, the error in admitting the draftsman's testimony in the present case did not constitute reversible error. Appellant has not clearly, definitely and fully shown that she was unduly prejudiced by the allowance of Grimsley's testimony. Alberger v. Harvison, 342 So.2d 537 (Fla. 3rd DCA 1977). It has been recognized that the error in admitting the testimony of a scrivener of a will is immaterial where consideration of such testimony was unnecessary in the construction and interpretation of the will. In Re Tompkins' Estate, 195 Kan. 467, 407 P.2d 545 (1965). We believe that Grimsley's testimony was unnecessary in the construction of the will and therefore view its admission as harmless error.

II.
As recognized by the trial court in its final order, the terms of the will itself establish that the marital deduction trust was liable for the payment of federal and state estate taxes. The will contains two express provisions relating to the payment of estate taxes. ITEM FIRST of the will provides as follows:
ITEM FIRST: My executors shall pay from my residuary estate all my just debts and funeral expenses, and all estate, inheritance and succession taxes, as soon as possible after my death without inconvenience to my estate or the executors thereof, without charging any specific legacy or devise therewith or with any part thereof, and without requiring contribution from any beneficiary of any policy of insurance on my life or any part thereof, or from any person receiving property included in my estate, other than under this will. (e.s.)
ITEM FIRST directs that estate taxes are to be paid from "my residuary estate." This provision further states that such payment shall be made without charging any specific legacy or devise and without requiring contribution from any beneficiary of insurance on the decedent's life, "or from any person receiving property included *373 in my estate, other than under this will." This portion of the decedent's will affirmatively declares that taxes are to be paid out of the residuary estate and that properties passing "other than under this will" (i.e. nonprobate assets) shall not be charged with taxes.
The second express provision of the will relating to payment of estate taxes is found in ITEM THIRD. The first sentence in ITEM THIRD describes the marital bequest in trust for Alice N. Lenahan as "that fraction of my residuary estate." Paragraph (f) of ITEM THIRD then provides that none of the property in the marital trust under ITEM THIRD shall be used for the payment of estate taxes "except to the extent, if any, that all other property in my estate shall not be sufficient for this purpose." (e.s.)
Read together, ITEMS FIRST and THIRD provide (1) that taxes are to be paid from the residuary estate; (2) that property passing other than by will should not be charged with taxes; and (3) that under ITEM THIRD the marital share is a fraction of the residuary estate, not to be charged with taxes except where property "in my estate" is not sufficient to pay taxes.
One of the major disputes between the appellees and appellant involves the interpretation of the phrase "in my estate" contained in subparagraph (f) of ITEM THIRD. Appellant contends that this phrase refers to the decedent's entire gross estate, which includes probate and nonprobate assets, and is not limited to property included in the probate estate.
According to appellees, the term "property in my estate" should be read as including the entire gross estate because that is the meaning the term is given when it is used elsewhere in the will. In ITEM FIRST, no other persons, other than the residuary beneficiaries, are to be charged with the payment of taxes and the executor may not look to any specific legacy or devise of "any person receiving property included in my estate, other than under this will" (e.s.) for the payment of taxes. According to appellant, this provision of the will indicates the understanding of the testator that his estate would include not only the assets passing under the terms of the will (the probate estate) but also all other property passing outside of the will (the nonprobate estate). Because the testator included this statement in the first paragraph of his will and later used the same term regarding the payment of estate taxes in ITEM THIRD subparagraph (f), the term should have the same meaning in both places. By reading the phrase to include both probate and nonprobate property, the intention of the testator would be followed and the marital trust would only share in the payment of taxes after all other property (both probate and nonprobate) had been exhausted. Since it was established that there are sufficient nonprobate assets to pay the taxes, the marital trust would no longer be subject to payment of the taxes.
We disagree with the appellant's construction. We agree with the appellees and the trial court that the testator intended the phrase "in my estate" to mean property in the probate estate only.
Under ITEM FIRST, the testator directed that taxes not be charged to property passing "other than under this will." In the same vein, under ITEM THIRD, where the amount of the marital trust is described as a fraction of the residuary estate, the testator recognized that interests in life insurance, jointly held property and other property interests might pass to Alice N. Lenahan "otherwise than by this will." Thus, in ITEM THIRD, the testator refers to nonprobate assets when addressing which assets may pass to Alice N. Lenahan, apparently recognizing that some assets will pass by will and some will pass other than by will.
Consequently, when the phrase "in my estate," without similar modifying language, was utilized in subparagraph (f) of ITEM THIRD, the testator expressly recognized two classes of property potentially subject to estate taxes: (1) nonprobate property: (ITEM FIRST: "or from any person receiving property included in my estate, other than under this will."); (ITEM *374 THIRD, first paragraph: "or in other property or interests in property passing under this will or having passed to my wife, ALICE N. LENAHAN, otherwise than by this will.") and (2) probate property (ITEM THIRD, subparagraph (f): "except to the extent, if any, that all other property in my estate shall not be sufficient for this purpose.")
Thus, when addressing the restriction on the payment of taxes on subparagraph (f) of ITEM THIRD, the decedent conspicuously and significantly did not include any reference to nonprobate assets; rather, he referred only to those assets "in my estate," inferentially meaning "in my [probate] estate."
Furthermore, under Florida case law, the words "in my estate" have been held to mean property in the probate estate. In In Re Barret's Estate, 137 So.2d 587, 592 (Fla. 1st DCA 1962), the court held that the terms "my estate" and "my entire estate" generally refer only to that property passing under the will over which the testator had a testamentary power of disposition. In Barret, the testator directed that taxes be paid prorate "by my entire estate." The contention that this clause prorated taxes to nonprobate jointly held property was rejected by this Court, and the language "my entire estate" was held to refer only to the probate estate.
Similarly, in In Re Estate of Hopkins, 349 So.2d 663, 664 (Fla. 4th DCA 1977), the court construed the term "adjusted gross estate" to refer to the probate estate, reasoning:
[U]nless an intention is expressly made to the contrary, a testator's reference to his estate will normally be limited to his probate estate * * * Whether the testator uses the words "estate," "gross estate," "adjusted gross estate," "net estate," distributable estate," or whatever, the "estate" referred to is the "probate estate", unless there is a specific provision or showing of intent to the contrary.
Appellant further maintains that the marital trust in the present case is a trust funded as a general devise and not a residuary trust. As a general devise trust, says appellant, the marital trust is funded first and no residuary remains to pay the estate taxes.
In support of her argument, appellant reasons that a residuary clause of a will begins with the traditional phrase, "I give, devise and bequeath all the rest, residue and remainder of my estate," and that all other clauses of the will which by definition precede the clause are either specific or general devise clauses. ITEM THIRD of the will is separate from and precedes ITEM FOURTH of the will which begins with the traditional residuary bequest language, "I give, devise and bequeath all the rest, residue and remainder of my estate." Thus, says appellant, ITEM THIRD of the will represents a general devise to the appellant.
Further, appellant claims that the language of ITEM THIRD expresses the testator's intention that the marital trust be considered a general bequest, separate and distinct from the residuary estate. Subparagraph (a) of ITEM THIRD states:
I direct that the trustees, after such audit shall have been made and final tax values established, withdraw property from this trust and add it to my residuary estate, as hereinafter provided, or withdraw property from any residuary estate and add it to this trust to effect a proper distribution of property to my respective trusts.
However, contrary to appellant's assertions, the bequest in trust for the benefit of Alice N. Lenahan was described by the testator in the first sentence of ITEM THIRD of his will as a fraction of the residuary estate and is thus not a general bequest. A general bequest is one which may be satisfied out of the general assets of the testator's estate, instead of from any specific fund. In Re Estate of Jeffcott, 186 So.2d 80 (Fla. 2d DCA 1966). Moreover, this type of bequest is not segregated or withdrawn from the estate under the terms of the will, but is to be paid in money or property as the will directs. A general bequest may comprise land, money, or intangibles, but has a prerequisite of designation by quantity or amount. 18 Fla. *375 Jur.2d Decedent's Property § 427. Such a bequest, unlike a fractional residual bequest, does not share in the economic gain or loss of the estate during administration. See In Re Rose's Estate, 165 So.2d 226 (Fla. 3rd DCA 1964) and King v. Citizens & Southern National Bank of Atlanta, Ga., 103 So.2d 689 (Fla. 3rd DCA 1958).
Also, contrary to appellant's assertions, a will may have more than one residuary clause. See Sternberg v. Florida National Bank of Jacksonville, 114 Fla. 580, 154 So. 844 (1934).

III.
Finally, the provisions of Sections 733.805 and 733.817, Florida Statutes (1981), relating to apportionment of taxes, are inapplicable to the instant case. Section 733.805(1) provides that if the testator makes provision by his will or designates the funds or property to be used for debts, estate taxes and expenses of administration, they shall be paid out of the funds or property as provided by the will.
Section 733.817, which deals with apportionment of estate taxes, plainly defers to provisions of the will. While the apportionment statute contains detailed rules relating to how taxes are apportioned in respect to both probate and nonprobate property, such rules are, in each instance, conditioned by the phrase "except as otherwise directed by the will." It is apparent in the instant case that the testator's will directs the payment of debts, estate taxes, and expenses of administration. Thus, the apportionment statute does not apply.
AFFIRMED.
JOANOS and THOMPSON, JJ., concur.