ALLEN, Judge.
This is an appeal from a final order of the County Judge of Palm Beach County denying appellant’s petition for probate of the purported last will and testament of deceased, Helen Louise Baier.
Helen Louise Baier, at the time of her death, was living in a house she owned in West Palm Beach, Florida. A friend of hers, Lois Green, was living with her at that time.
The deceased had never married. However, she and the appellant in this case lived together for many years. The appellant, Leighton, was required to spend a great deal of time in Miami during the years 1957 and 1958 but he continued to treat Helen Baier’s home as his residence and listed it as his address on his voting registration card.
•The decedent’s parents were deceased and her nearest living relative was Robert Green Harmon, one of the appellees. Mr. Harmon’s sister was a half-sister of the decedent’s mother.
Mr. Leighton testified that he had searched the house, desk, etc., thoroughly in looking for a will of the deceased, but had not found one. The safety deposit box of the deceased was opened and contained no will or other testamentary documents.
Anne Price, a friend of the decedent, Beulah Harmon and Robert Harmon testi *699 fied that after the funeral the three of them searched decedent’s bedroom and found among loose papers, on the top of the desk in decedent’s bedroom, an envelope, on the outside of which the word “will” was written, containing the will now in issue. These witnesses testified that the word “cancelled” was written across the face of the will when they found it. The will, according to their testimony, was placed in Beulah Harmon’s handbag where she kept it until turning it over to the First National Bank on or about May 9, 1958, after the bank was appointed Curator of the decedent’s estate. The Curator thereafter delivered the document to the court. Robert Harmon filed his caveat on May 12, 1958, with the County Judge for Palm Beach County after the appellant Leighton presented his petition to the County Judge seeking probation of the will. The appellees, as heirs at law, answered contending that the instrument was not a will that was entitled to probate as it had been cancelled during the life of the decedent.
The portion of the will involved herein is as follows:
“Item 2: I give, devise and bequeath all my estate, whatsoever, and wheresoever, both real and personal, to which I may be entitled, or which I have the power to dispose of at the time of my death, unto my dearest friend Irvin J. Leighton absolutely and in fee simple.
“Item 3: Should said friend pro-decease me or should we die in a common disaster at approximately the same time or under circumstances as to render it difficult to determine who died first, then I give, devise and bequeath all my said estate to my beloved friends, Eileen Taylor, Lois Green, Ann Hughes Price, Josephine Sheeran, Dorothy Duskin, Hazel Sowell and St Anns Church equally shared and absolutely and in fee simple. In the event of the death of any herein named, said portion will not pass on to the deceased heirs, but the remaining shall share equally in this estate.”
Across the above two paragraphs of the will the word “Cancelled” was written in pencil. The “C” of the word started in Item 2 and extended through two lines of Item 3 with the balance of the word extending on up into and through the Item 2 paragraph. The initials “H.B.” are written in pencil between Item 2 and Item 3. In the margin opposite Item 3 are the figures “3/14/57” and underneath that the words “Helen L. Baier.” The names of Eileen Taylor and Dorothy Duskin in Item 3 are scratched out with a ball point pen. The appellees contended that these markings constituted an act of revocation performed by the testatrix. Attestation and execution are not contested.
The lower court held that the evidence was sufficient to raise a presumption of cancellation and held that the proponent of the will had the burden of proof to show that the will had not been revoked or cancelled. Appellant introduced expert testimony that the date “3/14/57” and the signature “Helen L. Baier” were in the handwriting of the testatrix but that the word “Cancelled” or the initial “H.B.” were not. The appellee introduced expert testimony that the initials “H.B.” and the date “3/14/57” and the name “Helen L. Baier” were in the handwriting of the testatrix but expressed no opinion as to whether or not the testatrix wrote the word “Cancelled.”
The decision on fact of the cancellation of the will was decided by a very able county judge who wrote an excellent opinion in the case and made various findings of fact, and since there was evidence in the record from which the lower court could properly determine the question of fact, this court will not pass on such a question. See Williams v. Kane, Fla.1956, 88 So.2d 599; In re Zimmerman’s Estate, Fla.1956, 84 So.2d 560.
*700 The appellant states the following points involved on this appeal:
1. Did the probate judge abuse judicial discretion in weighing the probative force and legal effect of the evidence and testimony and finding that decedent’s will had been revoked, where the evidence and testimony showed that the appellee who would benefit by the intestacy of the decedent had possession of decedent’s will after her death, and the uncontro-verted expert testimony showed that decedent had not written the -word “cancelled” on said will ?
2. Does the “dead man” statute, Section 90.05, Florida Statutes 1957, F.S.A., prevent the proponent of a will from testifying to facts and circumstances, which arose during decedent’s lifetime, to negate the presumption of revocation of said will by the decedent?
The lower court found, by his - opinion, that the testimony of the handwriting experts introduced on each side of the contest more or less offset each other’s tes7 timony so the court stated that he would turn to the testimony of other witnesses in the case to determine from all of the evidence where the preponderance lies.
The court then stated in his opiniqn:
“The contestants produced as their witness one Ann Price who testified that Miss Baier told her on numerous occasions that she had revoked her will and was making changes whereby Mr. Leighton and two others were to be omitted therefrom. Another witness for contestants, Eileen Davis, testified that Miss Baier called her on the telephone about Christmas time of 1957 and told her that she had voided her will. One Josephine Sheeran, testified that, shortly before her death, Miss Baier told her that she had revoked her will. These witnesses were friends of the decedent, two of whom she had named as legatees in Item 3 of her will.
“In Section 86 of Vol 1 of Mr. Red-fern’s Work, supra, we find the following rule:
“'Whenever the question is raised as to whether or not there has been a revocation by any destruction or obliteration, parol and other extrinsic evidence is necessarily admissible to show what acts were done by the testator and what his intentions were. A will cannot be revoked by parol declarations of the testator, as that would be contrary to law, but parol evidence as to what the testator did and as to what his declarations were, whether made before, at the time of, or after the alleged act of revocation, if concerning the act of revocation or attempted revocation, would be admissible. From such parol evidence, as well as from all other circumstances connected with the alleged revocation, it would be determined whether a revocation had taken place or not.’
“There is also evidence in the record to show that Miss Baier had become displeased with Mr. Leighton because he had failed to repay an obligation and had not given her the attention she had expected of him.
“As against this the proponent produced as his witnesses Mrs. Mary Beatrice Collins, who testified that Miss Baier on two occasions, one shortly (after) her death, had told her that she had left everything to Mr. Leigh-ton and Mrs. Bobbie Miller, Dr. Miller, Mrs. Edith Thorburn and others who testified to the friendly relations existing between Miss Baier and Mr. Leighton up to the time of Miss Baier’s death.
“Highly significant in the mass of evidence produced by both sides in the case, in the opinion of the Court, is an insurance policy on the life of the *701 decedent in which she changed the beneficiary from Irvin J. Leighton to her executors, administrators or assigns on June 26, 1957, approximately three months after the date which appears on the margin of the will near the word ‘cancelled’.
“A careful consideration of the evidence as a whole and the surrounding circumstances of the case leads me to the conclusion that the preponderance of the evidence is in favor of the respondent-contestants.”
The appellant’s second point, to-wit:
“Does the ‘dead man’ statute, Section 90.05, Florida Statutes 1957 [F. S.A.], prevent the proponent of a will from testifying to facts and circumstances, which .arose during decedent’s lifetime, to negate the presumption of revocation of said will by the decedent?”
was derived from the fact that the lower court refused to permit the appellant to testify as to transactions and circumstances involving his relation with the decedent.
The cases involving the question of the applicability of statutes exluding the testimony of one person because of the death of another to proceedings for the probate of a will are not all in accord. The reason for this is undoubtedly the varying terms of the so called “dead man” statutes in the different states. Thus it is necessary to examine our own statute 90.05' and construe strictly the issue at bar accordingly.
The appellant contends that the question involved was settled in Florida by Hays v. Ernst, 1893, 32 Fla. 18, 13 So. 451. Appellant Hays was named as executor and sole beneficiary under the will of Johann Christian Lehmann. Probate of the will was contested upon the filing of a caveat by the State’s Attorney. At the time of .Lehmann’s death, he was living in a room in Hay’s house and died there. Hays testified that Lehmann was very appreciative for the kindness that Hays had given Leh-mann and during Lehmann’s last illness he requested Hays to get someone to write a will for Lehmann. Hays then testified to the writing of the will and its execution. The will purported to devise to the proponent, Hays, real estate in Duval County and in Ohio, and also all the bank account of Lehmann with a bank in Jacksonville. The County Judge refused to consider the testimony of Hays and excluded it because he was an interested party. The Florida Supreme Court then ruled it was error to exclude the foregoing testimony and reversed the decision of the County Judge stating at page 453 of 13 So.:
“A proceeding to establish or invalidate a will rests upon different grounds from ordinary causes of action, and is in the nature of a proceeding in rem. The heirs at law and next of kin and devisees are usually nominal parties, but the proceeding is between living parties. The cause of action does not exist until after the death of the testator, and he is in no sense then a party to the proceeding. On-a contest of a will, the subject-matter of investigation is the act of the testator in executing the will, and the proceeding is directed to this matter. The execution of a will is not a transaction or communication between the testator and a legatee, and the heirs at law, next of kin, and devisees are competent witnesses as to the factum of the execution of the will.” (Cases omitted.) (Emphasis added.)
The sole issue before the Supreme Court in the Hays case was the validity of the execution of the will. Parol evidence and circumstantial evidence are admissible when necessary to show what papers constituted a will offered for probate, and to show the proper execution of the will. The authenticity of the instrument executed by the testator as his last will may be proved by anyone who has *702 knowledge of the facts. The source of knowledge of the witness is subject to the test of cross-examination by the opposition. It is to be noted, however, that the testimony sought to be introduced by appellant in the instant case does not deal with the question of fact of the execution of the will but by appellant’s own admission was proffered to show the nature and extent of appellant’s relationship with the decedent. A similar type of testimony was sought to be introduced in the case of Madison v. Robinson, 1928, 95 Fla. 321, 329, 116 So. 31, 34.
In the Madison case the plaintiffs, claiming to be the sole heirs of Robin Robinson by marriage alleged to have been contracted in Alabama on January 25, 1876, brought an action of ejectment against defendant, who claimed the house and property involved as the sole heir of Robin Robinson by his alleged prior common-law marriage with defendant’s mother. At the trial defendant placed her mother, Eliza Washington, on the stand who testified concerning the alleged common-law marriage with decedent Robin Robinson. The plaintiffs moved to strike Eliza Washington’s testimony on the basis that it concerned transactions and communications with decedent and if true would make her an interested party in the litigation as the widow of Robin Robinson. The trial court sustained the objection and defendant assigned this ruling as error. The Supreme Court, in deciding the admissibility of Eliza Washington’s testimony, stated at page 35 of 116 So.:
“We have, however, reached the conclusion that the competency vel non of the testimony in question cannot be disposed of by holding that this case falls within the above class of cases cited by plaintiff in error, including that of Hays v. Ernst, supra. Pre-termitting for the present the question as to whether Eliza Washington’s testimony was sufficient to show that she was ‘interested in the event of the suit,’ we are clearly of the opinion that it pertained to ‘a transaction or communication with the deceased,’ which distinguishes it from the case of Hays v. Ernst. ‘Transaction and communication’ are words of quite comprehensive import. (Cases omitted.) While marriage, whether formally solemnized or a common law marriage, is something more than a mere contract, it is nevertheless a contract. It is founded upon the mutual consent and agreement of the parties. (Cases omitted.) It is therefore necessarily a ‘transaction,’ as well as a ‘communication,’ between the parties.
“The fact that the estate of the deceased is not interested in the result of this case is not material to this question, as it was in the Alabama cases cited, for the reason that our statute, unlike the one in Alabama, applies not only to suits where such testimony is offered against the estate of such deceased person, but also to suits where it is sought to be produced against his heirs at law. It is true that whether the plaintiffs in this case were the sole heirs at law was the real question in controversy; but, at the time this testimony was offered by the defendant, evidence had been introduced which, if believed, was sufficient to prove that the plaintiffs were the heirs at law, as claimed by them, and which claim formed the basis of their suit.” (Emphasis added.)
Although the appellant in the instant case does not predicate his rights to Helen Louise Baier’s estate upon a common-law marriage, the testimony sought to be introduced was to show the intimate relationship between appellant and Helen Baier and its relevancy insofar as it showed that decedent intended to leave her estate to appellant and to negate the decedent’s intention to “cancel” her will. This testimony would of necessity have to fall within the category of “transaction and communication” with the decedent. In Embrey v. Southern Gas & Elec. Corp., Fla. *703 1953, 63 So.2d 258, 259, the Supreme Court held that:
“ ‘Transactions’ and ‘communications’ within meaning of dead man’s statute embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons and every method by which one person can derive impressions or information from the conduct, condition or language of another.” (Emphasis added.)
The question still remains whether appellant Leighton was “interested in the event of the action” under 90.05. The true test of an interest of a'witness was stated by the Supreme Court in the Madison case, supra [95 Fla. 321, 116 So. 35], quoting from section 389 of Greenleaf on Evidence:
“The disqualifying interest of the witness must be in the event of the cause itself and not in the question to be decided.”
And in section 390 of Greenleaf on Evidence (15th Edition) :
“The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence, for or against him, in some other action. It must be present, certain, and vested interest, and not an interest, uncertain, remote or contingent.”
This test of interest has been applied in numerous cases by the Supreme Court of Florida. In applying this test to the instant case, the appellant as sole legatee under decedent’s will is an “interested party” and prohibited from testifying concerning “transactions and communications” under Florida Statutes 90.05, F.S.A., to negate the presumption of revocation established by appellees who are the heirs at law of decedent.
We hold that the lower court committed no error in rejecting the testimony of the appellant since he was an interested party in this case and, therefore, was precluded under the “dead man” statute (F.S. § 90.-05, F.S.A.) from testifying.
We are further of the opinion that no reversible error appears in the record sop the lower court should be and is affirmed.
KANNER, C. J., and SHANNON, J., concur.