KANNER, Judge.
Executor of the will of Ann M. Muliin petitioned the County Judge’s Court of Pinellas County for construction of the will and codicil of Ann M. Muliin. The probate judge found that paragraph 1 of the codicil was so worded that the intent of the testatrix was not clear, presenting an ambiguity which made it necessary for the court to examine the will and codicil in their entireties and to take testimony whereby the true intent of the testatrix might be revealed. Appellants, heirs at law, had filed their answer to the petition for construction, asserting that there could be no *469 doubt as to the meaning and effect of the first paragraph of the codicil but that it revoked in toto the third paragraph and subparágraphs (a) to (c), inclusive, of the fourth paragraph of the decedent’s last will and testament, which provided for distribution of the residuary portion of the estate. They accordingly asked that the court order distribution to them of their respective intestate proportions. Certain testimony of the attorney who drafted the will and codicil and of a witness to execution of the codicil was admitted. Appellants offered no testimony. On appeal, they ■question.the probate judge’s finding of ambiguity and the admission of certain testimony, as well as his conclusion that the ■codicil revoked the residuary clause only insofar as it related to the interest of the •deceased sister of testatrix and accelerated •■the other dispositions contained in the •clause.
We are in accord with the probate judge’s holding that the codicil is ambiguous and the true intent of the testatrix obscure. Our problem, then, is to ascertain the appropriate procedure through which the -cloud of ambiguity can be dispelled so that the wishes of the testatrix may be given ■ effect.
A basic principle of construction is that a probate judge shall look to the complete testamentary instrument upon the subject of a testator’s intent. When the will and codicil here are examined, it nowhere appears that any reference is made to the appellants. Any rights which they might have to a share in the estate are thus not expressed within the four corners of those instruments but would have to arise, if at all, from an asserted act of omission whereby the testatrix is claimed to have stricken from her will all the residuary legatees through her act of revocation in the codicil. This revocation, the appellants urge, allowed the residuary to pass by intestacy to the appellants as heirs at law in default of designated beneficiaries. On the other hand, the appellees were provided for by the testatrix in paragraph two of her will by specific bequests to each of them of a named sum of $500, and they were also named in paragraph four[1] as remainder-men of the residual trust after the death of the sister of testatrix. In the paragraph of revocation itself, the testatrix set out that inasmuch as her sister had predeceased her, the residual paragraphs wherein provision for the deceased sister had been made were to be revoked.[2] Thus, *470 the testatrix herself gave voice to the reason underlying the revocation, that of the demise of her sister.
However, as to the will and codicil, the true intent of the testatrix, in the opinion of the county judge, remained a matter of ambiguity. For this reason, as pointed out by the judge in his order, it became necessary, not only that he examine the total will and codicil, but that he admit the testimony of the attorney who drafted those documents and that of a witness to the execution of the codicil. This he did under the authority of Marshall v. Hewett, 1945, 156 Fla. 645, 24 So.2d 1, as cited by him in his order.
Appellants have made no contention that any undue influence, falsification, or fraudulent conduct is present in this case; nor have they sought to controvert by evidence the testimony indicating that appellee re-maindermen rather than appellants were the intended objects of the bounty of testatrix. What appellants are contending most strongly is that the revoking paragraph is clear and unambiguous and as such may not be varied or even explained by any proffered evidence. In the alternative, they assert that if the paragraph of revocation is obscure, then it still must be interpreted on its face without recourse to any testimony or evidence tending to show that the intention of the testatrix was other than that which the written language of the instruments establishes. They insist that there exists no latent ambiguity under the language of the codicil as heretofore footnoted and that, if the revoking clause be patently ambiguous, it will not permit of construction through extrinsic evidence.
It sometimes becomes necessary that extrinsic evidence be resorted to for aid in the construction of a will because of uncertainty or doubt as to the meaning of some statement contained in it. In such instance, it is generally recognized that evidence relating to the attendant facts and circumstances existing at the time of the execution of the will and of which the testator had knowledge may be Admitted, not to vary nor to contradict any of the terms of the will, but to explain or resolve the ambiguity and so to enable the probate court to effectuate the dispositive intent of the testator. See Annotation, 94 A.L.R. 26, p. 57 et seq.; Page on Wills, volume 4, section 1623, p. 650, and section 1624, p. 655; 57 Am.Jur., Wills, section 1043, p. 677; In re Herr’s Estate, 1960, 400 Pa. 90, 161 A. 2d 32; and Conway v. Estes, Tex.Civ.App. 1961, 346 S.W.2d 374.
In this connection, the case of Marshall v. Hewett, supra [156 Fla. 645, 24 So.2d 2], cited by the probate judge as authority for the admission of extrinsic evidence to enlighten him with regard to the true intent of the testatrix, contains the following statement by the Supreme Court:
“If there are expressions in the will which are difficult to reconcile, then the situation of the testator at the time he made his will, the ties that bound him to the object of his beneficence, the motives that prompted him to make the will he did make, and the influences that wrought on him at the time, will be considered in arriving at the purpose of the testator.”
Testimony was admitted to indicate clearly the desires of the testator as to the possession, custody, and control of his property after his death, the Supreme Court stating; that these questions might otherwise have-given rise to some doubt.
A decision of this court in the case of; Pancoast v. Pancoast, Fla.App.1957, 97 So. 2d 875, delineated matters which might be properly looked to by the court where certain language used in the testamentary instrument rendered the intent ambiguous.. In determining the wishes of a testator, it was deemed proper for a court to consider *471 all circumstances surrounding the execution of the will, the condition, nature, and extent of the property devised, the testator’s relationship and attitudes toward the members of his family and to the beneficiaries of the will, their financial condition and in general the relationship between all the parties concerned. The court stated: ■“In order to do this the court should as nearly as humanly possible try to put itself in the place of, or the armchair of, the testator.”
Counsel for appellants objected to the testimony of the attorney who drafted the will and codicil, not as being incorrect, but as being inadmissible because the attorney was precluded from testifying as to the declarations of intent or instructions given him directly by the testatrix. This point need not be considered here, however, since, during the examination of the attorney, there was presented extrinsic evidence not touching upon the instructions or direct statements of the testatrix and relevant to the issue involved.
This extrinsic evidence given by the .drafting attorney in substance was that immediately prior to execution of the codicil he had explained to testatrix that under the will and codicil, inasmuch as her sister had died, the trust would not come into effect but that the residue of her estate would he equally divided between the five remaindermen named in the same paragraph. After receiving this information, the testatrix immediately signed the codicil in the presence of subscribing witnesses. This testimony as to the knowledge possessed by testatrix at the moment of execution was pertinent, and it enabled the judge to fit himself more effectively into the “armchair” of the testatrix in order to ascertain her dispositive intent at the time she executed the codicil.
From the clarifying evidence, when considered with the complete instruments, it is thus apparent that testatrix through .the revoking paragraph intended only to remove the name of her deceased sister from her will and to accelerate the remainder so as to vest the residuary of her estate in the appellees after her death, as was adjudicated by the probate court. Nowhere in the will and codicil were the appellants named as recipients of any part of the estate. Instead, their reliance is placed upon a claim of partial intestacy. Conversely, the appellee remaindermen were specifically named as beneficiaries in paragraphs two and four of the will.
The county judge’s holding is also in accord with the tenet of construction which favors a reasonable interpretation leading to a full testamentary disposition of the estate of a decedent. A construction which results in partial intestacy should not be used unless it clearly appears that such was intended. See Koerner v. Borck, Fla. 1958, 100 So.2d 398.
Affirmed.
ALLEN, Acting C. J., and SMITH, CULVER, Associate Judge, concur.

. “Fourth: All of the rest, residue and remainder of my estate of -whatsoever kind and wheresoever situated, I give, devise and bequeath to The First National Bank in St. Petersburg, a National banking corporation with its principal place of business at St. Petersburg, Florida, as Trustee, to be held by it in trust, to invest, reinvest and manage the same for the following uses and purposes:
“(a) From my said trust estate, my said Trustee shall pay to my sister, Mary H. LeClair, sometimes known as Mary H. Babb, the sum of $150.00 per month to be paid from the time of my death until the time of the death of my said sister, said sum to be paid first from the income but if the income is insufficient, then the balance from principal and I direct that my said Trustee give every kindness and consideration to my said[1] sister.
“(b) The trust created by this Will shall end upon the death of my said sister, Mary H. LeClair, sometimes known as Mary H. Babb, and upon the ending of the said trust, the entire trust corpus, together with any accumulation and undistributed income shall be divided equally between the above named Martha C. Coslet, Joseph P. Coslet, Charles Coslet, Jr., Virginia Coslet Ains-worth and Mary C. Owen, or in the event that any of said persons shall die prior to the termination of the said trust, then the balance of my trust estate shall be divided equally between the survivors of them.
“(c) The Trustee appointed under this Will and its successors, in addition to tlie powers given by the laws of the State of Florida, shall have the following powers * * * ”

. “First: Inasmuch as my dear sister, Mary H. LeClair, sometimes known as Mary H. Babb, has predeceased me, I *470 hereby revoke paragraph Third and paragraph Fourth, sub-paragraphs (a) to (c) inclusive, wherein I made provisions for my said sister.”