550 So.2d 83 (1989)
In re ESTATE OF Francis M. McGAHEE.
Barbara Lea PERRY, Marilyn Irene Cozart, and Francis Martin McGahee, Jr., Individually, Appellants,
v.
Beverly McGahee NEESMITH, As Personal Representative of the Estate of Francis M. McGahee, Deceased, and Beverly McGahee Neesmith, Francis McGahee Hall, Barbara McGahee Buchanan, Sharon D. McGahee, and Andrew Murray Bell, Individually, Appellees.
No. 88-1471.
District Court of Appeal of Florida, First District.
September 21, 1989.
Rehearings Denied November 7, 1989.
*84 James M. McLean and Donald C. Wright, Jacksonville, for appellants.
John S. Winkler, P.A., Victor Buttner, and Frederic Buttner, Jacksonville, for appellees.
ZEHMER, Judge.
This appeal is taken from a final order concluding that decedent's will of September 21, 1977 revoked all prior wills and caused the estate to pass by intestacy. Appellants contend that the court below misconstrued and misapplied section 732.512, Florida Statutes (1987), authorizing incorporation of a writing by reference in the will. We reverse.
Decedent, Francis M. McGahee, and his second wife died in a helicopter crash in Pasco County, Florida on December 9, 1986. Shortly thereafter a document, consisting of four sheets of paper (consisting of five pages) clipped together and placed in an envelope, was found in a desk in decedent's office located in his home. The document was admitted to probate as decedent's will by order of December 31, 1986. The name of the person whom decedent had designated by the will as his executor was written on the outside of the envelope.
The fourth and fifth pages of the document, a holograph written on both sides of decedent's professional letterhead stationery, purported to bequeath one-half of decedent's estate to his second and thenpresent wife and one half of the estate to his three children by that wife.[1] It also purported to devise one dollar to Andrew Murray Bell, who was named as decedent's son in a court trial held June 2-3, 1969, and expressly excluded Bell from any further participation in decedent's estate. Written by decedent's hand across the top of this page is the date June 7, 1969.[2]
The first page of the document consisted of a form will entitled "Last Will and Testament" and filled in by decedent as follows:[3]
In the name of God, Amen. I, Francis M. McGahee of the City of Orange Park, Fla., County of Clay, State of Florida, being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or the undue influence of any person whomsoever, do hereby make, publish and declare this to be my last will and testament and revoke all other wills previously made by me.
First,
 attached dated June 7, 1969
 Reconfirmed May 23, 1975
 Reconfirmed May 11, 1977
 Reconfirmed Aug. 30, 1980.
Lastly, I hereby nominate and appoint Richard W. Gordon as Executor of this will.
In Witness Whereof, I have hereunto set my hand this 21st day of Sept., 1977, at Orange Park, Fla.
 Francis M. McGahee, D.D.S.
Signed, sealed, published and declared to be the Last Will and Testament of Francis M. McGahee, the test... . above named, in our presence, and at his request, and in his presence, and in the presence of each other, have hereunto *85 subscribed our names as witnesses this 21st day of Sept. 1977.
Theodore A. Haeussner D.M.S. residing at 2255 Gabriel
signature of witness Dr. O.P.
Janice Johnson residing at 1725 Gumtree Dr. O.P.
signature of witness
Diane Vance residing at 2772 Holly Ridge Dr. O.P.
signature of witness
 Mae P. Bell
 Mae P. Bell, Notary Public
[notary stamp]
Some three months after the will was probated, decedent's children by his first wife filed an objection to the validity of the will, asking the court to invalidate and revoke the "series of documents purporting to be a Will" and to order the residuary estate to pass as though decedent had died intestate.[4] At trial, these petitioners stipulated to the validity of page one of the document as the decedent's will and challenged only the remaining attached pages.[5]
Andrew Murray Bell, also a petitioner below and appellee here, asked the probate court to revoke the document admitted to probate as decedent's will, or in the alternative to construe it so as to allow all of decedent's property to pass by intestate succession.
At the hearing on the petitions, after stipulating that page one of the probated document is a valid will, the parties litigated the issue of whether the writing dated June 7, 1969, which was attached by paper clip and enclosed in the same envelope, was incorporated by reference in the will on page one in accordance with the requirements of law. The appealed order held it was not.
By statute Florida law allows a writing to be incorporated by reference into a will if (1) the writing is in existence at the time the will is executed, (2) the language of the will manifests an intent to incorporate by reference, and (3) the language of the will describes the writing sufficiently to permit its identification.[6] There was no question that the writings bearing dates prior to September 21, 1977, were in existence on that date, so the first requirement has been met. In determining that the second and third statutory criteria were not met, however, the court below gave the statute an impermissibly strict construction.
The primary goal of the law of wills, and the polestar guiding the rules of will construction, is to effectuate the manifest intention of the testator. In re Estate of Lenahan, 511 So.2d 365 (Fla. 1st DCA 1987), Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1 (1945). Section 732.512 is clearly written with that goal in mind.
The statute's second criterion  that the language of the whole will, taken in its entirety, must make plain an intention to incorporate the writing specified  requires an assessment of the entire document. In *86 re Estate of Mullin, 133 So.2d 468 (Fla. 2d DCA 1961). Thus proceeding, we find a printed form document with an opening, pre-printed paragraph revoking all other wills previously made. The second paragraph opens "First," followed by a blank space of approximately one-third of the page, the ostensible purpose of which is to make a testamentary disposition of decedent's estate. The third paragraph carries language for the nomination and appointment of an executor, and the final paragraphs contain language concerning the testator's signature, execution and witnessing.
There is no basis on the evidence before us to conclude that the testator intended to follow any organization of the dispository scheme in his will other than that of the form on which he chose to write his will. Nor is there any evidentiary basis to conclude that the testator intended to write a will merely to allow his estate to pass by intestacy, In re Estate of Mullin, 133 So.2d 468[7]; or merely to appoint an executor, In Re The Estate of Baer, 446 So.2d 1128 (Fla. 4th DCA 1984).[8] On the contrary, the paragraph denominated "First" was unquestionably intended to be the dispository paragraph, and in it the testator wrote in his own hand the words, "attached dated June 7, 1969" together with notations of reconfirmation of that June 7, 1969 document. The common meaning of the word "attach" is to fasten on or affix to; connect or join; to connect as an adjunct or associated part.[9] Taken together with the language of the whole instrument, the use of this word can only impart an intention to incorporate a document dated June 7, 1969 attached to the will, and thus make it a part of the paragraph intended for the testamentary disposition of decedent's property.
In determining whether the language of the entire document manifests the decedent's testamentary intent, the language must also be interpreted in light of the circumstances surrounding its execution. Whether or not the will is ambiguous on its face, the court is required to receive and consider evidence of the circumstances surrounding its execution in determining testamentary intent. See In re Estate of Lenahan, 511 So.2d 365, 371 (Fla. 1st DCA 1987); Scheurer v. Tomberlin, 240 So.2d 172 (Fla. 1st DCA 1970); Pancoast v. Pancoast, 97 So.2d 875 (Fla. 2d DCA 1957); See also 18 Fla.Jur.2d Decedent's Property, § 356.
The authenticity of the writing executed by the testator and offered for probate may be proved upon the oath of an attesting witness; and where such witness is not available, upon the oath of the person nominated in the will as the personal representative or "any other person having no interest in the estate under the will, that he believes the writing exhibited to be the true last will of the decedent." § 733.201, Fla. Stat. (1987). "Parol evidence and circumstantial evidence are admissible when necessary to show what papers constituted a will offered for probate, and to show the proper execution of the will." Leighton v. Harmon, 111 So.2d 697, 701 (Fla. 2d DCA 1959).[10] The Court below noted in its order that there was testimony from a witness to the will that she specifically recalled reading the document at the time the will dated September 21, 1977 was admitted to probate. This witness testified that decedent called her to his business office on September 21, 1977 for the purpose of witnessing his will; that he gave her several pages which were fastened together in some manner; *87 that these included the form page on top and the handwritten pages four and five at issue here; that he asked her to read these pages before witnessing the will; that she did read the entire document; that the pages she then read were the same pages as the exhibits numbered 1, 4 and 5 admitted to probate; and that the document was properly witnessed at that time by herself in the presence of the testator and two other witnesses. The witness further testified that she reconfirmed the will at a later date. The trial court was required to consider this testimony of a competent witness to the execution of a will in its quest to determine from the language used in the will the true intention of the testator as to what constituted his will, and nothing in section 732.512 directs the court to disregard this evidence and do otherwise. See Batterton v. United States, 406 F.2d 247 (5th Cir.1968), cert. denied, 395 U.S. 934, 89 S.Ct. 1995, 23 L.Ed.2d 448 (1969). In Batterton a husband and wife executed mutual wills, the first paragraphs of which stated that they were executed "pursuant to the attached contract this day made with my [wife or husband]." Applying Florida law, the court determined that the language "pursuant to the attached contract" together with the fact that a contract was indeed attached to the will, evidenced a clear intent by the testatrix to incorporate by reference the document attached.[11]
As was the court in Batterton, we are mindful that intestacies are not favored in the construction of wills. The rule has been stated thus: "If the terms of a will are such as to permit two constructions, one of which results in intestacy and the other of which leads to a valid testamentary disposition, the construction is preferred which will prevent intestacy." In re Gregory's Estate, 70 So.2d 903, 907 (Fla. 1954) (quoting Redfern on Wills and Administration of Estate in Florida, 2d ed., p. 192). The language of the will under consideration plainly manifests an intention to incorporate the writing specified which, when read as part of the will pursuant to section 732.512, will prevent the passage of decedent's property as though he had died intestate. Hence the second criterion under that statute is met.
The third criterion in the statute requires that the language of the will describe the writing sufficiently to permit its identification. The trial court construed the statute to require that the will manifest on its face both the intention to incorporate a document by reference and a sufficiently clear description of the incorporated document to permit its identification without reference to any other documents or testimony showing the circumstances surrounding the execution of the will. Thus, the court declined to look to the June 7, 1969 document and determine if that was in fact the document referred to on the face of the will, despite the undisputed testimony of a witness to the will that this was in fact the document attached when the will was executed by decedent.[12] Appellees argued, and the trial court accepted, a strict construction of the section 732.512(1) language  "if the language of the will manifests this intent and describes the writing sufficiently to permit its identification"  as requiring sufficient identification of the document on the face of the will without reference to any evidence of surrounding circumstances or attachments to the will. We conclude the court erred in adopting and *88 applying this strict construction of the statute because it is wholly inconsistent with well established legal principles governing the construction of wills and would have the unwarranted effect of precluding the court from determining the testator's true intent. Indeed, the court must look to other documents to determine whether the document described in the will is in fact that which is described on the face of the will. See In re Gregory's Estate, 70 So.2d 903.[13]
The will before us describes a document dated June 7, 1969 as being attached to the will; that document was found clipped to the will in an envelope; the will and the document bore the decedent's signature and several notations of reconfirmation consistent with those in the will; and a witness to the execution of the will gave testimony that the attachment was part of the will when executed by the decedent. This was legally sufficient to establish that the decedent, by the language used in the will, manifested the intent to incorporate the attached document by reference and sufficiently described the writing to permit its identification with the certainty required to satisfy section 732.512, thus meeting the third criterion of the statute. We find no logical basis for construing and applying this section in the manner urged by appellees and followed by the trial court.[14]
The judgment is reversed and the cause is remanded with directions to enter judgment in accordance herewith. In view of this disposition, we find it unnecessary to reach appellant's second issue regarding the application of the doctrine of dependent relative revocation.
REVERSED AND REMANDED.
BARFIELD, J., concurs.
SHIVERS, C.J., dissents with written opinion.
SHIVERS, Chief Judge, dissenting.
I respectfully dissent and would affirm the trial court.
Appellants, the daughters and son of the testator's second marriage, appeal the trial court's order upholding the validity of the decedent's one page Will, dated September 21, 1977, but denying the validity of the documents paper-clipped to it.
The decedent, Dr. McGahee, and his second wife were killed simultaneously in a helicopter crash. Appellees Frances McGahee Hall, Beverly McGahee Neesmith, Barbara McGahee Buchanan, and Sharon D. McGahee are daughters of decedent's first marriage. Appellee Andrew Murray Bell is a son of the decedent, born out of wedlock.
The parties stipulated to the validity of the one page form will. Appellees successfully objected to the other papers which appellants attempted to include as portions of decedent's will.
The one page will (Exhibit 1) which all agree is valid and which was upheld by the trial court reads as follows:
In the name of God, Amen. I, Francis M. McGahee of the City of Orange Park, Fla., County of Clay, State of Florida, being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or the undue influence of any person whomsoever, do hereby make, publish and declare this to be my *89 last will and testament and revoke all other wills previously made by me.
First,
 attached dated June 7, 1969
 Reconfirmed May 23, 1975
 Reconfirmed May 11, 1977
 Reconfirmed Aug. 30, 1980.
Lastly, I hereby nominate and appoint Richard W. Gordon as Executor of this will.
In Witness Whereof, I have hereunto set my hand this 21st day of Sept., 1977, at Orange Park, Fla.
 Francis M. McGahee, D.D.S.
Signed, sealed, published and declared to be the Last Will and Testament of Francis M. McGahee, the test... . above named, in our presence, and at his request, and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses this 21st day of Sept. 1977.
Theodore A. Haeussner D.M.S. residing at 2255 Gabriel
signature of witness Dr. O.P.
Janice Johnson residing at 1725 Gumtree Dr. O.P.
signature of witness
Diane Vance residing at 2772 Holly Ridge Dr. O.P.
signature of witness
 Mae P. Bell
 Mae P. Bell, Notary Public
[notary stamp]
The other papers which the appellants sought to also have included as part of the will consisted of the first page (Exhibit 2), dated August 30, 1980, which contained signatures of the late doctor and, purportedly, three witnesses with a notary. The notary's commission had expired February 4, 1979, however. The rest of the page was blank. The next page (Exhibit 3), contained what was purported to be a signature of a notary public. Nothing else was written on this paper. The last sheet of paper, written on both sides (Exhibit 4 and 5), consisted of handwritten notes of Dr. McGahee dated June 7, 1969, May 23, 1975, and May 11, 1977. This last sheet of paper purported to bequeath half of decedent's estate to his second wife and the other half to his and his second wife's daughters and son, the appellants Barbara Lee Perry, Marilyn Cozart, and Francis Martin McGahee, Jr.
The attorney for the Estate at that time, who is also one of the attorneys for the appellants herein, testified that he was in the decedent's office in decedent's home for the purpose of trying to locate the last will and testament and that appellant Marilyn Cozart, decedent's daughter, found an envelope in a desk that had on it the name of Richard W. Gordon who was named (in the one page Will) as decedent's executor. He testified there were five sheets, paper-clipped together, but not attached in any other way. The attorney, under cross-examination, testified that Exhibit 1 contained staple holes; that there were no staple holes in Exhibit 2; that there were no staple holes in Exhibit 3; but there were staple holes in Exhibits 4 and 5. When the attorney found the documents, none of the Exhibits were stapled together.
The notary flatly denied she had notarized the signatures on August 30, 1980, on Exhibit 2. She said she had never notarized a paper after her commission expired, that she had thrown away the notary seal because that commission had expired on February 4, 1979, and she had a new seal; that she had never notarized a document with a stamp that had expired; and that she was in the hospital for a spinal fusion on August 30, 1980, and could not have signed that at that time. As to Exhibit 3, she testified it was not signed by her as she had never notarized a blank sheet of paper.
The trial judge also saw, heard and observed the other witnesses as they testified about the papers which appellants sought to have declared a part of decedent's Will. Evidence was received as to the relationship of these witnesses to the decedent and to the estate which at that time was being administered by appellant Barbara Lea Perry (Richard W. Gordon, the named personal representative had renounced his right to so act).
*90 We should not second-guess the trial court on issues of fact where, as here, there is competent, substantial evidence in the record to support the trial court's determination. The trial court sat as a trier of fact. In FirstAmerica Development Corp. v. County of Volusia, 298 So.2d 191, 192 (Fla. 1st DCA 1974) we stated that:
When a trial judge sits as a trier of the facts and has an opportunity to observe the witnesses, their demeanor, candor or lack of it, he is entitled to, indeed he must, determine whether the testimony of such witnesses is worthy of belief. Such a determination, in the absence of proof of bias or prejudice (which has not even been suggested in the case sub judice) will not be disturbed on appeal.
Appellants in this case, none of whom are minors, have not suggested either bias or prejudice on the part of the trial judge.
In Clegg v. Chipola Aviation, Inc., 458 So.2d 1186 (Fla. 1st DCA 1984), we again stated that
it is the function of the trial court to evaluate and weigh the testimony and other evidence to arrive at findings of fact. It is not our function to reweigh the evidence nor substitute our judgment for that of the trial court. However, we must look to whether the judgment of the trial court is supported by competent evidence.
(quoting Puritz v. Rosen, 442 So.2d 278, 280 (Fla. 4th DCA 1983)).
The evidence is sufficient if "reasonable men could have reached the verdict" when viewing the case in the aspect most favorable toward the successful litigant. 3 Fla. Jur.2d Appellate Review, section 346 (1978). "Since a trial court's findings of fact are clothed with a presumption of validity, an appellate court will not disturb those findings even if it might have reached a different conclusion... ." Parsons v. Motor Homes of America, 465 So.2d 1285, 1293 (Fla. 1st DCA 1985).
The only identification of the document which appellants sought to include as part of the will is "attached dated June 7, 1969." Our Legislature has mandated that for a separate document to be included as part of a will, the language of the will itself must manifest such intent and must describe the writing sufficiently to permit its identification. The statute provides:
732.512 Incorporation by reference.
(1) A writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification.
The statute is clear. The language manifesting the intent to incorporate must be in the will itself. The language in the will itself must sufficiently describe the writing to permit its identification.
In 2 T. Thomas and D. Smith Florida Estates Practice Guide, 37-1 (1989), these required elements are addressed:
(1) A provision in the will itself must refer to the paper sought to be incorporated and normally, also, as being in existence at the time of the will's execution... .
(2) Reference made in the will to the outside instrument must be sufficient to reasonably identify the instrument sought to be incorporated into the will.
(3) The will provision making reference to the outside instrument must reflect the intent of the testator to make the instrument a part of his will.
(4) There must be proof that the document sought to be made a part of the will was in existence at the time the will was executed... .
(5) The document sought to be made a part of the will must correspond to the description given in the will.
"Attached dated June 7, 1969" falls woefully short of the legislatively mandated standard for incorporation by reference.
In Taylor v. Republic National Bank of Dallas, 452 S.W.2d 560 (Tex.Civ.App. 1970), that court held that in determining whether documents are incorporated into a will by reference, the word "attached" used in a will is not equivalent to the word "incorporated". The court went on to state that "[t]he word `attached' is not a sufficient *91 identification. An extraneous document in order to be incorporated into a will must be so clearly identified as to preclude all probability of mistake as to the instrument referred to." Id. 563.
Under the circumstances of this case, the trial court was correct in holding that the language in the will itself does not manifest the intent and describe the document dated June 7, 1969 sufficiently to permit its identification. The one page will which all of the parties agree is valid, revoked all other wills and designated a personal representative. Section 731.201(35), Fla. Stat. (1985) provides that a will may do only that:
(35) "Will" ... includes an instrument which merely appoints a personal representative or revokes or revises another will.
It is not the purpose of the court to make a will or to attempt to improve on one that the testator has made. See In re Estate of Barker, 448 So.2d 28 (Fla. 1st DCA 1984).
In my opinion, the trial court did not err and I would affirm.
NOTES
[1] Barbara Lee Perrey, Marilyn Irene Cozart, and Francis Martin McGahee, Jr., respondents below and appellants here.
[2] Words handwritten in the five page document are italicized for clarity.
[3] The second page, handwritten on the professional letterhead stationery of "Francis M. McGahee, D.D.S." contained the writing: reconfirmed 8-30-80 and decedent's signature, his signature again followed by D.D.S., and the signatures of the same three witnesses as witnessed page one together with the notary stamp and signature of Mae P. Bell, Notary Public. The third page, on the same professional letterhead, is otherwise blank except that it is notarized at the bottom.
[4] Petitioners below and appellees here, the children of decedent's first marriage are Frances McGahee Hall, Beverly McGahee Neesmith, Barbara McGahee Buchanan, and Sharon D. McGahee.
[5] Had the trial court revoked the probate of the five-page document in its entirety, then decedent's will of July 25, 1969 would have been the next most recent last will and testament. This document bequeathed all of decedent's estate to his second wife and, in the event she failed to survive him, to his children of that second marriage, per stirpes. Decedent stated in this document, "In so leaving my entire estate to my said wife, I am not unmindful of my children, MARILYN McGAHEE, FRANCIS MARTIN McGAHEE, JR. and BARBARA LEA McGAHEE, as well as ANDREW MURRAY BELL, who has been adjudged to be one of my children, and the children born to me the issue of my marriage to Ella Marie McGahee Sanders." Because decedent was found to have died simultaneously with his second wife, the effect of this will, if probated, would have been to distribute decedent's estate to the children of the second marriage. This effect is, of course, the same as that of the five-page document admitted to probate and presently before the court, with the sole exception that under the latter Andrew Murray Bell will receive one dollar.
[6] Section 732.512(1), Florida Statutes (1987), entitled "Incorporation by reference" reads: "A writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification."
[7] "A construction which results in partial intestacy should not be used unless it clearly appears that such was intended." 133 So.2d at 471.
[8] "Surely he did not intend to leave a will that did nothing but designate a personal representative." 446 So.2d at 1129.
[9] The American Heritage Dictionary of the English Language, (2d ed. 1979), verba attach, p. 84.
[10] The party with knowledge of the facts was found by the court in Leighton to be an interested party by virtue of the fact he was named as a beneficiary in the contested instrument and would gain or lose by the direct legal operation and effect of the judgment. The party who testified below as to the proper execution of the will in her presence and as to what papers constituted the will which she witnessed was not an interested party.
[11] Although section 732.512, Florida Statutes was adopted after the decision in Batterton, the codification of the Florida rule merely confirmed the principle and legal analysis applied in that case.
[12] Paragraph 8 of the order reads in part:

In order for the document dated June 7, 1969 to be incorporated by reference, according to the statute, the language must manifest this intent and describe the writing sufficiently to permit its identification. There was testimony from a witness to the will that she specifically recalled reading the document at the time the will dated September 21, 1977 was admitted, having been directed by the decedent to read everything in its entirety. The question still before the Court remains does the language in the will itself manifest this intent and describe the writing sufficiently to permit its identification. To this question the Court answers negatively. (Emphasis in original).
[13] In In re Gregory's Estate, supra, the testatrix's will referred to a provision "Fifth (g) 2" of her husband's will. The husband's will had no provision so labeled, and the court held the writing was therefore not sufficiently described so as to allow its ready identification. Obviously, this determination could not have been made without looking to the other document.
[14] We are aware, as the dissent points out, that the two pages marked exhibits 2 and 3 were found with the will, exhibit 1, and exhibits 4 and 5, although 2 and 3 did not have any staple holes at the top as did the other three pages, a fact indicating that only the first page of the will and pages 4 and 5 had previously been stapled together. Since the dispositive terms of the will are to be found only in exhibits 1, 4 and 5, we find no particular relevancy and probative value in the fact the notary public disclaimed at trial that she had ever notarized either of exhibits 2 or 3, and conclude this testimony does not impeach the probative value of the evidence surrounding the attachment and incorporation of exhibits 4 and 5 in exhibit 1 as the intended disposition of the testator.